**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>Edna Marie Brown,<br><br>Debtor(s). | C/A No. 12-07082-JW<br><br>Chapter 13<br><br>**ORDER DENYING CONFIRMATION<br>AND DISMISSING CASE** |

This matter comes before the Court for consideration of confirmation of the plan filed January 18, 2013, by Kimesha Brown, as representative of the debtor, Edna Marie Brown ("Debtor"). At the hearing, the chapter 13 trustee ("Trustee") indicated his objection to confirmation of the plan because Debtor is now deceased. This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b). Pursuant to Fed. R. Civ. P. 52, which is made applicable to contested matters by Fed. R. Bankr. P. 7052 and 9014(c), the Court makes the following findings of fact and conclusions of law:[1]

**FINDINGS OF FACT**

1. Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on November 13, 2012 (the "Petition Date").

2. The Schedules filed by Debtor with the petition indicated that, as of the Petition Date, she had regular income from Social Security, food stamps, and from contributions from Kimesha Brown and Rhonda Brown, Debtor's adult daughters.

3. At the Petition Date, Debtor owned no real property. She owned a mobile home, titled solely in her name, located on a leased lot, and subject to a lien held by Vanderbilt Mortgage and Finance ("Vanderbilt"). Vanderbilt's lien appears to exceed the value of the

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any conclusions of law constitute findings of fact, they are so adopted.

mobile home. Debtor owned no other personal property with value above her exemptions.

4. As of the Petition Date, Debtor, Kimesha Brown, Rhonda Brown, and Debtor's granddaughter lived together in Debtor's mobile home.

5. On Schedule B, Debtor listed a pending personal injury lawsuit with a value of $1.00. Debtor's attorney indicated at the hearing that Debtor's death may be related to the personal injury, so that the lawsuit may become a wrongful death claim. Debtor's attorney acknowledged that the lawsuit has not been filed and that any proceeds from such lawsuit would not be available in time to fund the plan as proposed. No evidence was presented regarding the likelihood of recovery on any personal injury claim or the potential value of such recovery.

6. Schedule F lists a total of $17,463.00 in general unsecured claims owed by Debtor. The total amount of general unsecured claims for which a proof of claim has been filed is $21,392.35. According to the Schedules, other than the debt on the mobile home owed to Vanderbilt and a claim by the Charleston County Revenue Collections for taxes on the mobile home, Debtor owes no secured or priority claims.

7. On November 14, 2012, Debtor filed her Chapter 13 plan (the "Plan"), which provided for a plan payment of $505 per month for 60 months. The Plan did not provide for the treatment of Charleston County Revenue Collection's secured tax claim.

8. Debtor passed away on December 26, 2012.

9. Kimesha Brown was appointed by the probate court as personal representative of Debtor's probate estate on January 7, 2013.

10. The § 341 Meeting was held on January 8, 2013, with Kimesha Brown testifying as the personal representative of Debtor's probate estate.

11. On January 11, 2013, the Trustee filed an Objection to Plan indicating concerns

2

with the feasibility of the Plan and case administration issues due to Debtor's death.

12.   On January 14, 2013, Debtor's attorney filed a Motion to Appoint Kimesha Brown as Special Administrator.[2]  The Motion was served on all creditors and the Trustee, no objections were filed, and an order authorizing Kimesha Brown to continue the administration of Debtor's bankruptcy case was entered February 8, 2013.

13.   On January 18, 2013, Debtor's attorney filed the following, signed by Kimesha Brown, as representative of Debtor's estate:

   a.   An amended chapter 13 plan ("Amended Plan"), which provided for the treatment of Charleston County Revenue Collections, with no other changes. The plan payment proposed in the Amended Plan remained unchanged, at $505 for 60 months.

   b.   Amended Schedule I, removing the social security and food stamp income of Debtor, and adding the net income of Kimesha Brown. Rhonda Brown's contribution remained unchanged.

   c.   Amended Schedule J, including Kimesha Brown's transportation expenses and showing net monthly income after expenses of $507.69.

14.   Both the Plan filed November 14, 2012 and the Amended Plan filed January 18, 2013 contain a motion to establish the value of the lien on the mobile home at $21,845 and pay that value pursuant to the plan terms. Vanderbilt has filed a secured claim in the amount of $22,300.45, but has not otherwise responded to the Plan or Amended Plan, and the deadline to object has passed.

---

[2] The Court notes that the titling of this type of motion as a "Motion to Appoint Special Administrator" is erroneous, as the Bankruptcy Code does not authorize bankruptcy courts to appoint individuals as "Special Administrators." This type of motion would be more properly titled "Motion to Approve Continued Administration of Bankruptcy Case."

3

15. Rhonda Brown has also passed away since the Petition Date.

16. On March 5, 2013, Debtor's attorney filed a second Amended Schedules I and J, signed by Kimesha Brown, as representative of Debtor's estate, removing the contribution from Rhonda Brown due to her death, but adding the Social Security and food stamp income from Debtor's granddaughter and indicating a monthly net income of $597.59.

17. Kimesha Brown and Debtor's granddaughter continue to reside in the mobile home and seek to maintain it as their residence.

18. The Trustee acknowledges that the income and contributions from Kimesha Brown and Debtor's granddaughter would be sufficient, if allowed, to fund the Amended Plan filed January 18, 2013.

19. Payments proposed by the Amended Plan to the Trustee are current through February, 2013. The payments were made after Debtor's death and appear to have been made by Kimesha Brown.

20. The Trustee requests that the Court deny confirmation without leave to amend, as Debtor is deceased and the circumstances will not change to allow Debtor to file a confirmable plan. For this reason, the Trustee further requests that the case be dismissed pursuant to 11 U.S.C. § 1307(c)(5)[3].

**CONCLUSIONS OF LAW**

A debtor bears the burden of proof at confirmation. In re Bowen, C/A No 07-05485, slip op. at 5 (Bankr D. S.C. Jan 9, 2008). The issue before the Court is whether a debtor who files a case but dies prior to confirmation can meet this burden.

As this Court previously stated in In re Quint, C/A No. 11-04296-jw, slip op at 2 (Bankr.

---

[3] Further references to the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) will be by section number only.

D. S.C. Jun 22, 2012):

> When a debtor dies during the pendency of his or her bankruptcy case, it is unclear how the case will proceed in the future or what procedure parties should follow upon such death. Pursuant to Fed. R. Bankr. P. 1016, when a chapter 13 debtor dies, the "case may be dismissed; or if further administration is possible and in the best interest of the parties, the case may proceed and be concluded in the same manner, *so far as possible*, as though the death or incompetency had not occurred." (emphasis added).

Rule 1016 provides no instruction as to the meaning of "further administration" of the estate, or its limitations, if any. The rule merely provides that further administration must be "possible" and "in the best interest of the parties." Under the circumstances of this case, the critical inquiry is whether further administration is "possible" when it requires confirmation of an Amended Plan filed after the death of Debtor.

The original Plan filed by Debtor on November 14, 2012, prior to her death, could not be confirmed as it did not adequately provide for the treatment of Charleston County Revenue Collections. Furthermore, the Plan depended on Debtor's income and contributions from her now deceased daughter for its feasibility. The Amended Plan was filed by Kimesha Brown, as representative of Debtor's estate, and relies on contributions from Kimesha Brown and Debtor's granddaughter for its feasibility. In its order entered February 8, 2013, the Court authorized the continued administration of Debtor's bankruptcy case, but made no conclusions regarding whether an amended plan proposed on behalf of Debtor could be confirmed in this case. As instructed by the United States Supreme Court in <u>United Student Aid Funds, Inc. v. Espinosa</u>, the Court is required to independently examine Debtor's plan in order to ensure that it complies with the applicable provisions of the Bankruptcy Code. 130 S.Ct. 1367, 1381, 1381 n. 14 (2010) (stating that "[Section 1325(a)] requires bankruptcy courts to address and correct a defect in a debtor's proposed plan even if no creditor raises the issue").

5

Section 1322(a)(1) requires that the plan "shall provide for the submission of *all or such portion of future earnings or other future income of the debtor* to the supervision and control of the trustee as is necessary for the execution of the plan" (emphasis added). Moreover, it is a requirement for confirmation under § 1325(a)(6), that "the *debtor* will be able to make all payments under the plan and to comply with the plan." Under § 109(a) only a "person" may be a "debtor" and a decedent's estate is not a "person," as that term is defined in § 101(41).

The Amended Plan cannot provide for the submission of any future earnings or income of the Debtor, as Debtor's Social Security and food stamp income have ceased due to her death and the estate has no other sources of income. The Amended Plan relies solely on contributions from Debtor's descendents, who are non-debtors. While the Court has allowed individual debtors to include regular and reliable contributions from third parties for purposes of meeting feasibility requirements at confirmation, such contributions have only been allowed to supplement the debtor's income and have not been allowed to provide all of the income for the bankruptcy case. See In re Williams, C/A No. 97-08824-W, slip op. at 4 (Bankr. D.S.C. Jan. 13, 1998) (denying confirmation where debtor's entire income was derived from gratuitous contributions from third parties, because debtor failed to demonstrate that she had stable and regular income to satisfy the feasibility requirement of § 1325(a)(6)). Under the circumstances of this case, it appears that neither the deceased Debtor nor her estate can make the required future contributions in accordance with §§ 1322(a)(1) and 1325(a)(6).

Although Debtor's counsel raised the possibility of funds from a personal injury lawsuit owned by Debtor as a source of funding for the Amended Plan, the Amended Plan does not provide for such funding and there is no evidence before the Court to convince the Court that the

6

Amended Plan could be feasibly funded by such a lawsuit.[4] Furthermore, Debtor has presented no evidence regarding the likelihood or amount of such recovery from the personal injury lawsuit. The funding of the plan must not be "speculative, conjectural or unrealistic." In re Costello, No. 10-03385, 2011 WL 2712970, at *2 (Bankr. N.D. Iowa Jul. 12, 2011); see also Kristan v. Nesbit (In re Nesbit), BAP No. EP 07-068, 2008 WL 8664762 (B.A.P. 1st Cir. Jun. 17, 2008) (vacating the bankruptcy court's order confirming plan in part because debtor failed to demonstrate that a proposed balloon payment from a judgment from pending litigation was reasonably certain to occur or was anything more than speculation, thus there was insufficient evidence regarding feasibility to support the confirmation order).

Debtor's counsel also argues that since a hardship discharge may occur after the death of a debtor, as indicated by this Court in In re Quint, "further administration" under Rule 1016 should be interpreted as allowing Debtor's estate to file an amended plan and achieve confirmation under § 1325. First, the Court does not believe this argument is a reasonable extension of its ruling in Quint. Quint is distinguishable from this case because the debtor in Quint had a confirmed plan that had been performed for several months prior to his death and the case met the requirements for a hardship discharge under § 1328(b). See C/A No. 11-04296-jw, slip op. at 3 (Bankr. D.S.C. Jun. 22, 2012); In re Quint, C/A No. 11-04296-jw, slip op. (Bankr. D.S.C. Aug. 16, 2012). Second, § 1328(b) expressly provides that a hardship discharge may be granted only after the confirmation of the plan. See § 1328(b) (providing that "[s]ubject to subsection (d), at any time *after the confirmation of the plan* and after notice and a hearing, the court may grant a discharge to a debtor that has not completed payments under the plan ....") (emphasis added). It appears that the bankruptcy courts which have granted hardship discharges

---

[4] The Trustee has indicated that he would object to a plan funded solely from a pending lawsuit or solely from the sale of Debtor's property due to the speculative nature of such funding. There appears to be no other sources of income to fund the plan from Debtor's estate.

for deceased debtors have done so only in circumstances where the debtor died post confirmation. In re Graham, 63 B.R. 95 (Bankr. E.D. Pa. 1986); In re Bond, 36 B.R. 49 (Bankr. D.N.C. 1984); In re Dickerson, No. 10-60680, 2012 WL 734160, slip op. (Bankr. N.D. Ohio Mar. 6, 2012); In re RedWine, C/A No. 09-84032-JB, 2011 WL 1116783, slip op at 1 (Bankr. N.D. GA Mar. 8, 2011).

Finally, Debtor's counsel has cited no case law where a personal representative or special administrator of a debtor's estate has been permitted to file and obtain confirmation of a plan in an individual bankruptcy case following the death of the debtor.[5] It appears that the "further administration" of Chapter 13 cases contemplated by Rule 1016 is best restricted to cases where the plan has been confirmed prior to the death of the debtor. See In re RedWine, 2011 WL 1116783, at *1 (citing In re Spiser, 232 B.R. at 673) (stating that "[f]urther administration may only be possible if a plan has been confirmed"). Debtor has made no showing of a benefit to Debtor or Debtor's probate estate from confirmation of the Amended Plan. Rather, the benefit of the Amended Plan appears entirely aimed at Debtor's descendents.

Based on the foregoing, the Court finds that Debtor has failed to meet her burden of demonstrating that the Amended Plan meets the requirements for confirmation under § 1325. Under the circumstances of this case, it further appears that neither Debtor nor Debtor's estate has a reliable source of income or other means to fund any amended plan proposed by Debtor's representative and therefore, dismissal of this case is appropriate under § 1307(c)(5).

## **CONCLUSION**

Based on the foregoing, it is therefore,

---

[5] Some courts have held that only a debtor can file an amended plan under § 1321, but considering its ruling, the Court finds it unnecessary to address that issue at this time. See In re Navarro, C/A No. 12-21062PM, 2012 WL 5193743, slip op at 2 (Bankr. D. Md. Oct. 19, 2012) (concluding that a debtor's probate estate would be unable to propose a Chapter 13 plan, even if an appointment of a personal representative for the estate was obtained) (citing In re Spiser, 232 B.R. 669, 673 (Bankr. N.D.Tex.1999)).

ORDERED that the objection to confirmation of the Trustee is sustained and confirmation of the plan is denied; and

IT IS FURTHER ORDERED that the case is hereby dismissed pursuant to 11 U.S.C. §1307(c)(5).

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**03/25/2013**



_____
US Bankruptcy Judge
District of South Carolina

Entered: 03/25/2013